Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order

United States Courts
Southern District of Texas
FILED

*May 21, 2025*

Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | **CRIMINAL NO.: 4:25-cr-00267** |
| | § | **SEALED** |
| **v.** | § | **18 U.S.C. § 371** |
| | § | **Conspiracy to Commit Wire Fraud** |
| **TYNEZA P. MITCHELL,** | § | **(Count 1)** |
| **Defendant.** | § | |
| | § | **18 U.S.C. § 1343** |
| | § | **Wire Fraud (Counts 2-6)** |

### INDICTMENT

THE GRAND JURY CHARGES THAT:

## COUNT ONE
### (Conspiracy: 18 U.S.C. § 371)

### A.  INTRODUCTION

1.      From in or about October 28, 2020, through in or about March 17, 2022, in the Houston Division of the Southern District of Texas, and elsewhere,

**TYNEZA P. MITCHELL,**

defendant herein, along with other co-conspirators, known and unknown to the Grand Jury, did knowingly devise and intend to devise a scheme and artifice to defraud the United States government and specifically the COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment, and Vaccine Administration for the Uninsured Program, commonly referred to as the "HRSA COVID-19 Uninsured Program," by causing false and fraudulent paperwork to be submitted to HRSA COVID-19 Uninsured Program claiming in-person

office visits and consultations for uninsured patients who were tested for COVID-19 when in fact no such visits or consultations took place, all while in the Houston, Texas area, as more fully set forth below.

2.    At all times material to this indictment, during the recent COVID-19 pandemic Congress passed and the President signed into law several legislative acts designed to provide financial assistance and reimbursements to health care providers treating uninsured individuals. One such law, commonly known as the CARES Act, initially appropriated $100 billion in relief funds and was intended for health care providers to prevent, prepare for, and respond to the coronavirus.   A portion of this funding, provided through the "Provider Relief Fund," supported COVID-19 testing and treatment of uninsured individuals.   Multiple additional federal programs and acts appropriated monies to reimburse providers for either the testing or treatment of COVID-19 for uninsured individuals.

3.    At all times material to this indictment, the Health Resources and Services Administration ("HRSA"), a federal agency that is part of the U.S. Department of Health and Human Services ("HHS"), oversaw and administered these funds for the testing or treatment of COVID-19 for uninsured individuals through the HRSA Uninsured Program. HRSA contracted with UnitedHealth Group to provide infrastructure for the HRSA Uninsured Program for, among other things, a process for patient identification and a system to handle claims processing, which includes the reimbursement to approved providers for COVID-19-related testing and treatment.

4.    Participating in the HRSA Uninsured Program typically involved a provider: (1) enrolling in HRSA; (2) submitting Patient Rosters to HRSA; and (3) submitting claims to HRSA.

5.    As used in this indictment, the term "Billing Codes" refers to "Current Procedural Terminology" (CPT) codes, generally 5 digits in length, established by the American Medical

Association to identify types of medical procedures performed and streamline identification of services rendered by qualifying doctors.

6.      At all times relevant, these CPT billing codes would then be submitted to HRSA for reimbursement.    Amounts of reimbursement are directly tied to billing codes submitted.    For example, as noted in this indictment, code 99202 designates a "office or outpatient visit for the evaluation and management of a new patient" where such physicians "typically spend 20 minutes face-to-face" with the patient or family.   Likewise, as referenced in the indictment, code 99212 designates the same "face-to-face" "office or out-patient visit" for established patients except that medical problems may be "minor or uncomplicated" and such visits typically take 10 minutes.

7.      CPT billing codes, as used in this indictment, triggered reimbursement by the federal government to qualified, submitting providers.     The HRSA program required reimbursement submissions to be accompanied by the names and license numbers of properly credentialed medical personnel, generally physicians, before payment would be considered.

8.      Additionally, payment for properly submitted CPT codes referencing uninsured patients via HRSA was made by Optum Bank Treasury, an entity contracted to deliver payment for the HRSA based on submitted and accepted claims, which was and is located in, and dispersed monies from, Draper, Utah, all such funds moving via interstate wire transfer.

9.      At all times material to this indictment, TYNEZA P. MITCHELL lived, operated the following scheme, and committed the following overt acts in the Southern District of Texas, specifically in and around Houston, and Harris County, Texas.

10.      Defendant MITCHELL was and is a licensed family nurse practitioner.     As such, during the relevant period, she was qualified to provide basic medical care without the oversight of

3

a fully licensed physician.      Additionally, MITCHELL had the ability to prescribe tests, diagnose

patients, and to subsequently bill appropriate parties for the cost of her services.    MITCHELL was

able to render care under her state-issued certification number ending xx2908 and billed under

certification number xx1202.

11.    Starting in November 2019 to present, MITCHELL was the registered owner and

operated "COMPREHENSIVE CARE CLINIC" (CCC) with a listed address located within the

Southern District of Texas.      During this time period, the physical location of CCC was a small

office between a martial arts studio and a barber shop in a strip mall located in Spring, Harris

County, Texas.

12.    In and around January 2021, MITCHELL and CCC pivoted from operating as a

small community health clinic to service the COVID-19 testing arena, despite having no experience

in the field.    From January 2021 through roughly March 2022, MITCHELL and CCC primarily

billed for the treatment of uninsured COVID-19 testing patients.

### B.    THE CONSPIRACY

13.    From in or about October 28, 2020, through in or about March 17, 2022, in the

Houston Division of the Southern District of Texas, and elsewhere,

### TYNEZA P. MITCHELL,

the defendant, and others known and unknown, did knowingly combine, conspire, confederate,

and agree with others known and unknown, to commit fraud and related activity in connection

with wire fraud, in violation of Title 18, United States Code, Section 371 and Title 18 United

States Code, Section 2.

4

14.     It was a part and object of the conspiracy that the defendants, along with other co-conspirators, did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to the grand jury, to execute a scheme and artifice to defraud and to obtain money and property by false and fraudulent pretenses, representations, documents and promises, by committing wire fraud, in violation of Title 18, United States Code, Section 371 and Title 18, United States Code, Section 2.

## C.     THE MANNER AND MEANS OF THE CONSPIRACY

15.     The defendants sought to accomplish the purpose of the conspiracy by, among other things, the following manner and means:

16.     During the time period at issue, MITCHELL and CCC were able to obtain personal information for hundreds of people who sought free testing at multiple "pop-up" testing clinics, many of which were located in parking lots in and around the Houston area, which were primarily operated by a single local business.   This business was owned and operated in the Southern District of Texas by an individual with whom MITCHELL had extensive communication during the execution of this scheme.

17.     Using the patient information collected by the local business, MITCHELL submitted claims, along with billing codes and authorizations under her authorizing identification numbers, to eHealthSource Inc, (eHealthSource) a third-party medical billing company.     eHealthSource then billed the HRSA fund on behalf of CCC.

18.     The submissions made by MITCHELL and CCC contained false and fraudulent billing codes.   Specifically, the vast majority of billing codes submitted to eHealthSource by MITCHELL and CCC to induce reimbursement from HRSA designated in-person, out-patient visits

conducted by MITCHELL herself.   In fact, in no known case were any of the patients submitted for reimbursement actually seen in-person by MITCHELL in any capacity.

19.    For example, MITCHELL submitted billing claims for the majority of the 2021 University of Houston Women's Basketball team, despite the fact that none of them knew who she was or visited her CCC clinic.    MITCHELL submitted claims for purported in-person visits to her Comprehensive Care Clinic for a variety of people, generally from the Houston area, none of whom had ever met or been treated by MITCHELL.    The majority of these claims seem to have been made on patients seen at "pop-up" or drive-up COVID Testing centers in the Houston area.

20.    In total, between January 13, 2021 and March 17, 2022, MITCHELL, using her billing identification number xx1202, submitted 154,371 claims to the HRSA via eHealthsource Inc.   The vast majority of the claims submitted contained CPT billing codes for in-person visits allegedly performed by MITCHELL herself.    Of the claims examined, none could be confirmed as having been performed by MITCHELL or her CCC facility.

21.    Additionally, MITCHELL and CCC billed HRSA for in-person visits and consultations in extreme and unrealistic volumes.    Claimed patient visits per day and per doctor exceeded physical and human boundaries and were patently false on their face.

22.    The following examples represent some of the overt acts in which MITCHELL engaged to perpetuate the conspiracy:

a.    For the date of December 28, 2021, MITCHELL and CCC submitted CPT codes for 2,669 individual visits and consultations allegedly performed by MITCHELL, equating to roughly one patient visit every 33 seconds for the entire 24-hour period.

b.   For the date of January 5, 2022, MITCHELL and CCC submitted CPT codes for 2,880 individual visits and consultations allegedly performed by MITCHELL, equating to roughly one patient visit every 30 seconds for the entire 24-hour period.

c.   For the date of January 6, 2022, MITCHELL and CCC submitted CPT codes for 2,770 individual visits and consultations allegedly performed by MITCHELL, equating to roughly one patient visit every 31 seconds for the entire 24-hour period.

d.   Over the course and scope of the scheme, Mitchell transferred a total of $2,129,500.33 from the CCC business account, namely the Bank of America account ending in x2779, to the local business conducting COVID-19 testing on uninsured patients in and around the Houston area in order to secure the names and personal identifying information of uninsured patients who had taken COVID-19 tests for which HRSA would pay for reimbursement. For example, MITCHELL transferred the following amounts from CCC's Bank of America account ending x2779 to the local business's Woodforest bank account ending in x7328 and Wells Fargo bank account ending in x6078:

| Date | Amount | Account and Remarks | Type |
|------|--------|---------------------|------|
| July 01, 2021 | $35,821.43 | Woodforest Bank x7328 – "2nd Quarter Disbursement" | Cashier's Check |
| October 12, 2021 | $52,153.34 | Woodforest Bank x7328 – "3rd Quarter Disbursement" | Cashier's Check |
| January 10, 2022 | $57,636.58 | Wells Fargo Bank x6078 – "4th Quarter Disbursement" | Cashier's Check |
| March 07, 2022 | $1,971,713.89 | Wells Fargo Bank x6078 – No Memo | Wire |

23. False and fraudulent representations and submissions by MITCHELL and CCC were sent via wire transfer and email from Houston, Texas to eHealthSource, which in turn submitted these claims to the HRSA claims processing centers housed on servers located in Elk River and Chaska, Minnesota, all such communications moving in interstate commerce via wire transfer. Additionally, payment for submitted CPT codes referencing uninsured patients via HRSA was made by Optum Bank Treasury, the entity contracted to deliver payment for the HRSA based on submitted and accepted claims, which was and is located in, and dispersed monies to, MITCHELL and her company COMPREHENSIVE CARE CLINIC, from Draper, Utah, all such funds moving via interstate wire transfer.

In violation of Title 18, United States Code, Section 371 and Title 18, United States Code, Section 2.

### COUNTS TWO THROUGH SIX
**(Wire Fraud: 18 U.S.C. § 1343)**

24. Paragraphs 1-21 are incorporated and re-alleged herein.

25. On or about the dates set forth below, in the Houston Division of Southern District of Texas and elsewhere, the defendant

# TYNEZA P. MITCHELL

for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money from the HRSA by means of false and fraudulent pretenses and representations and promises, knowingly submitting claims or causing claims to be submitted for

the following services, ultimately causing HRSA to deliver via interstate wire transfer monies and

funds made payable to the defendant, as set out below:

| Counts | Patient Initials | Claimed Service Date | Claim ID Number | CPT Billing Code | HRSA Payment Date | HRSA Payment Number |
|--------|------------------|---------------------|-----------------|------------------|-------------------|---------------------|
| 2 | M.A. | 10/29/2021 | DD77003491 | 99202 | 02/16/2022 | 730154128 |
| 3 | W.H. | 03/09/2021 | CR63713690 | 99202 | 06/22/2021 | 650285139 |
| 4 | L.B. | 10/23/2021 | DD71670160 | 99202 | 02/11/2022 | 9728528926 |
| 5 | K.J. | 10/23/2021 | DD71669383 | 99202 | 02/11/2022 | 9728528926 |
| 6 | T.H. | 10/23/2021 | DD77002363 | 99202 | 02/16/2022 | 730154128 |

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF CRIMINAL FORFEITURE
**[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]**

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States

Code, Section 2461(c), the United States gives notice to the defendant,

# TYNEZA P. MITCHELL,

that in the event of conviction of the offenses charged in Counts One through Six of this Indictment,

the United States will seek forfeiture of all property, real or personal, which constitutes or is derived

from proceeds traceable to such offenses.

### Property Subject to Forfeiture

(a) The defendant is notified that the property subject to forfeiture includes, but is not

limited to, the following property:   The real property at 19114 Coleto Creek Bend, Cypress,

Texas 77433 together with all improvements, buildings, structures and appurtenances, which is

legally described as:

> Lot 10, Block 1, of Towne Lake, Section 39, a subdivision in Harris County, Texas, according to the Map or Plat thereof recorded under Film Code No. 687881 of the Map Records of Harris County;

(b)   one 2022 Mercedes S580 with VIN # W1K6G7GB2NA133002;

(c)   one 2023 Infinity QX60 with VIN # 5N1DL1FR0PC332075;

(d)   one 2023 Land Rover Range Rover with VIN # SALKVBE7XPA035377; and,

(e)   one Tiffany Ring, platinum band with 2.01 carat emerald cut diamond inscribed with identification number "T&Co.X04290073."

## MONEY JUDGMENT AND SUBSTITUTE ASSETS

The United States gives notice that it will seek a money judgment against the defendant.

In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists,

the United States will seek to forfeit any other property of the defendant up to the amount of the

money judgment.

### A TRUE BILL

**Original Signature on File**

FOREPERSON OF THE GRAND JURY

NICHOLAS J. GANJEI
United States Attorney
Southern District of Texas

By:   *Thomas Carter*
THOMAS CARTER
CHRISTINE LU
Assistant United States Attorneys
Southern District of Texas

10